UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER M. KUHN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO. 1:22-cv-00434-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Martin O'Malley,* | ) |
| *Commissioner of Social Security* | ) |
| *Administration*,[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jennifer M. Kuhn appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Kuhn applied for DIB in November 2020, alleging disability as of February 20, 2020. (ECF 9 Administrative Record ("AR") at 234-42).[2] Kuhn's claim was denied initially and upon reconsideration. (AR 132-43). On February 28, 2022, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing (AR 46-83), and on May 4, 2022, rendered an unfavorable decision to Kuhn, concluding that she was not disabled because, despite

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

the limitations caused by her impairments, she could perform a significant number of jobs in the national economy (AR 21-35). The Appeals Council denied Kuhn's request for review (AR 5-14), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Kuhn filed a complaint with this Court on November 30, 2022, seeking relief from the Commissioner's decision. (ECF 1). Kuhn argues in this appeal that the ALJ erred by failing to build a logical bridge from the evidence to her conclusion not to include a sit-to-stand option in the assigned residual functional capacity ("RFC"). (ECF 17 at 4).

On the date of the ALJ's decision, Kuhn was forty-two years old (AR 267); had a high school education and two years of college (AR 257); and had past relevant work as an occupational therapy assistant (AR 33, 68; *see* AR 257-58). In her application, Kuhn alleged disability due to: lumbar spine fusion/plates/rods and screws, herniated discs and chronic back pain, severe psoriasis, multi-level degenerative disc disease ("DDD"), leg muscle weakness and numbness, and migraines. (AR 256).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing

any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

*B. The Commissioner's Final Decision*

At step one of the five-step analysis, the ALJ found that Kuhn had not engaged in substantial gainful activity after her alleged onset date of February 20, 2020. (AR 23). At step two, the ALJ found that Kuhn had the following severe impairments: status-post L5-S1 fusion and decompression, status-post laminectomy, DDD of the lumbar spine, psoriasis, and headaches. (AR 24). At step three, the ALJ concluded that Kuhn did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25). The ALJ then assigned Kuhn the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; avoid operating dangerous or heavy machinery with unprotected moving mechanical parts and unprotected heights; can perform frequent fingering with the bilateral upper extremities; cannot work in a very loud or loud work environment.

(AR 26).

The ALJ determined at step four that given the foregoing RFC, Kuhn could not perform any

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(a)(4), 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

of her past relevant work. (AR 33). At step five, however, the ALJ found that Kuhn could perform a significant number of unskilled, sedentary jobs in the economy, including document preparer, ticket checker, and touch up screener/inspector. (AR 34-35). Therefore, Kuhn's application for DIB was denied. (AR 35).

## C. The RFC

Kuhn argues that the ALJ erred by failing to build a logical bridge from the evidence to her conclusion not to include a sit-to-stand option in the assigned RFC. (ECF 17 at 4). Ultimately, Kuhn's argument is unpersuasive.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3).

When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore

5

an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

In her sole argument on appeal, Kuhn asserts that she "ma[de] multiple references to the inability to sit for prolonged periods of time or the need to switch positions to alleviate symptoms," and that the ALJ erred by failing to "address these limitations in the RFC or in subsequent discussions." (ECF 17 at 9). Specifically, Kuhn cites her hearing testimony, where she testified that she has constant pain in her lower back, buttocks, and legs, and can sit for only twenty minutes before needing to stand or change position. (*Id.* at 9-10 (citing AR 56-57, 61)). Additionally, Kuhn cites several portions of the record where she complained to medical providers about her back pain. (*Id.* at 10 (citing AR 328-29, 427, 509, 529, 532, 724, 733)). She contends this evidence "overwhelming[ly] . . . support[s] [her] need for a sit/stand option." (*Id.* at 10-11 (citing AR 87-100)). She further emphasizes that a prior administrative law judge opinion dated February 24, 2020, included a sit-to-stand option in her RFC. (*Id.* at 11 (citing AR 88)). Finally, Kuhn asserts that the omission of a sit-to-stand option in the RFC is material because the VE testified that if Kuhn "need[ed] to stand and stretch for about five minutes" every twenty minutes (AR 71), she would be unable to sustain competitive employment. (ECF 17 at 11).[4]

Contrary to Kuhn's assertion, the ALJ did not ignore Kuhn's claim that she could not sit for extended periods of time and needs to change position every twenty minutes. In summarizing Kuhn's testimony, the ALJ recited;

---

[4] This is not, however, the complete picture of the VE's testimony. The VE also testified that a sit-to-stand option "at the worker's choice" would *not* preclude competitive employment if the individual could stay on task while standing and stretching. (AR 71).

6

> [Kuhn] testified she could sit for twenty minutes at a time. She testified she could only stand for two to three minutes at a time and that she could only stand for that long two or three times in a day before she was done for the day and had to lie down. She also reported having constant low back, neck, and buttock pain. . . .
>     [S]he testified she could wash a few dishes with breaks. She indicated she would fold clothes but could not lift baskets. She could cook small meals with help. She claimed to need help getting in and out of a bath. She indicated she used a shower chair. She claimed to get dizzy bending over to tie her shoes. She claimed to be in bed most of the day and that she would take naps.

(AR 28).

The ALJ also considered the medical evidence pertaining to Kuhn's back and leg pain, noting that Kuhn underwent back surgery in September 2020 and that her pain improved after surgery. (*Id.* (citing AR 310, 325, 327, 362, 391-92). By December 2020, Kuhn had stopped taking pain medications due to concerns about possible side effects and was only taking Tylenol; she was experiencing increased pain and was using a walker yet did not want to resume taking prescription pain medications. (AR 29 (citing AR 472, 569)). She reported pain in her legs, more so on the left. (*Id.* (citing AR 571)). Testing in January 2021 showed a spinal fluid leak. (*Id.* (citing AR 531)). Consequently, Kuhn underwent a surgical repair, after which her low back pain improved with time but not her right leg radiculopathy. (*Id.* (citing AR 529, 531, 542-43)). By July 2021, Kuhn indicated that while she had more "electricity feeling" in her left leg, she could tolerate being active longer and her right leg was significantly better than before. (*Id.* (citing AR 724, 733, 735)). She was only taking over-the-counter anti-inflammatories, so was started on Celebrex, Gabapentin, and Tizanidine. (*Id.* (citing AR 735)). The ALJ also reviewed Kuhn's MRI, X-rays, myelogram, and CT evidence, concluding that these imaging tests "partially supported" Kuhn's symptom testimony. (AR 29-30 (citing AR 361, 364, 430-31, 450, 461-62, 511-512, 531, 533, 563-64, 567, 741-46)).

The ALJ further considered that Kuhn's strength was often intact, though at times she had

7

weakness in her legs and reduced sensation in her right lower extremity. (AR 31 (citing AR 329, 350, 364, 404, 474, 530, 533, 536, 539, 556, 560, 571, 734)). She had normal muscle tone and intact reflexes and coordination. (*Id.* (citing AR 329, 350, 431, 474, 530, 533, 556, 560, 571, 671, 728, 734)). She sometimes had reduced range of motion in her back, yet often had full range of motion. (*Id.* (citing AR 364, 404, 530, 533, 536, 560, 734)). She sometimes had an abnormal gait and a positive straight leg raise test, while other times she had a negative straight leg raise test. (*Id.* (citing AR 430-31, 530, 533, 536, 560, 571, 734)).

Finally, the ALJ considered the medical source opinions of record, which were issued by J. Sands, M.D., and Mark Ruiz, M.D., state agency physicians, who reviewed Kuhn's records in January and July 2021, respectively. (AR 32, 135-35, 141-42). These doctors concluded that Kuhn could perform "light" work in that she could lift or carry ten pounds frequently and twenty pounds occasionally; stand or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (AR 32, 135-36, 141-42). The ALJ found these opinions "generally consistent with [Kuhn's] physical exam findings," yet just "partially persuasive" because they did not fully address her headaches and psoriasis, which "would . . . be expected to result in some additional degree of limitations." (AR 32).

Ultimately, the ALJ found Kuhn's allegations about the severity of her symptoms "not entirely consistent with the evidence." (AR 33). The ALJ acknowledged that Kuhn had degenerative issues in her spine and significant complications with a cerebral spine fluid leak following a fusion surgery, but further considered that Kuhn had started to tolerate being more active and had not been on any pain medication other than over-the-counter anti-inflammatories until recently. (*Id.*) As such, the ALJ concluded that Kuhn's DDD status-post laminectomy and

fusion, psoriasis, and headaches would limit her to "sedentary work with postural, environmental, and manipulative limitations," but that such conditions were not disabling. (*Id.*).

The Court must not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869; *see also Jens*, 347 F.3d at 212. "The [C]ourt's job is limited to determining whether substantial evidence supports [the ALJ's] findings." *Jarvis v. Saul*, No. 18-cv-924-bbc, 2019 WL 13217386, at *7 (W.D. Wis. Oct. 28, 2019) (citing *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007)). "Phrased another way, the [C]ourt must determine whether the [ALJ] has identified the relevant evidence and built a logical bridge between the evidence and the ultimate determination." *Id*. (internal quotation marks omitted) (citing *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)). "As such, [the Court's] role is extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "In fact, even if reasonable minds could differ concerning whether [Kuhn] is disabled, [the Court] must nevertheless affirm the ALJ's decision denying [Kuhn's] claims if the decision is adequately supported." *Id.* (citation and internal quotation marks omitted).

"[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). That is, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Here, Kuhn has failed to carry her burden of producing a relevant medical source opinion to support her claim that she cannot sit for prolonged periods and must change position every twenty minutes. While Kuhn attempts to piggyback on an alternative hypothetical posed by the ALJ that included a sit-to-stand option, this argument is

9

ineffective because the ALJ ultimately declined to include a sit-to-stand option in the RFC. (ECF 17 at 11 (citing AR 70-71)). "The ALJ needed only to include limitations in [the] RFC determination that were supported by the medical evidence and that the ALJ found to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) (citation omitted). Here, Kuhn has not produced any medical opinion evidence assigning her a sit-to-stand limitation, much less one that requires her to be off task for five minutes every twenty minutes.[5] In contrast, the ALJ's conclusion that Kuhn can sit for six hours in an eight-hour workday with normal breaks is adequately supported by the opinions of Dr. Sands and Dr. Ruiz. (AR 135-36, 141-42).

Kuhn further argues that a sit-to-stand limitation should have been included because a prior ALJ's decision dated February 24, 2020, did so. (ECF 17 at 11 (citing AR 87-100)). That argument, too, is unavailing. To explain, while Kuhn's prior DIB application (filed July 3, 2018) was pending, she filed another DIB application on November 7, 2020, in which she alleged disability beginning February 20, 2020. (*See* AR 21). As such, this case addresses an unadjudicated period, and the ALJ's review is *de novo*. See *Charles K. v. Berryhill*, No. 1:18-cv-02013-JPH-DML, 2019 WL 667760, at *3 (S.D. Ind. Feb. 15, 2019) ("[I]f the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with

---

[5] In any event, as explained in footnote 4 *supra*, the VE testified that a sit-to-stand option "at the worker's choice" would *not* preclude competitive employment if the individual could stay on task while standing and stretching. (AR 71).

respect to the unadjudicated period." (quoting Acquiescence Ruling 98-4(6), 1998 WL 283902, at *2 (S.S.A. June 1, 1998))). Furthermore, "the Seventh Circuit [has] explained it was not aware of any authority 'that requires an ALJ to use the same RFC that a different ALJ used in denying the benefits for a prior period.'" *Id.* (quoting *Penrod ex rel. Penrod v. Berryhill*, 900 F.3d 474, 477 (7th Cir. 2018)); *see Michael G. v. Saul*, No. 4:18-cv-00102-TWP-DML, 2019 WL 3430561, at *4 (S.D. Ind. July 29, 2019) ("In other words, the SSA considers the application anew, rather than being beholden in any way to the outcome of an older decision.").

In sum, the Commissioner's final decision that Kuhn is capable of performing a limited range of sedentary work is supported by substantial evidence and adequately articulated, and therefore, must be AFFIRMED.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Kuhn.

SO ORDERED.

Entered this 20th day of February 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge